UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
HONGYAN LU,

        Plaintiff,

  -against-

CHASE INVESTMENT SERVICES, CORP.,
individually and D/B/A JP MORGAN CHASE.

        Defendant.

---------------------------------------------------------------x

**MEMORANDUM AND ORDER**
No. 07-CV-1256 (FB) (ALC)

*Appearance:*

| *For the Plaintiff:* | *For the Defendant:* |
|---|---|
| DAVID GEORGE GABOR, ESQ. | FREDERIC L. LIEBERMAN, ESQ. |
| Gabor & Gabor | J.P. Morgan Chase Legal Department |
| 400 Garden City Plaza, Suite 406 | 1 Chase Manhattan Plaza, 26th Floor |
| Garden City, NY 11530 | New York, NY 10081 |

**BLOCK, Senior District Judge:**

        Plaintiff Hongyan "Valerie" Lu ("Lu") brings a gender and ethnicity discrimination action against Chase Investment Services Corporation ("CISC"), alleging disparate treatment, hostile work environment, and wrongful termination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Lu additionally brings a claim for back pay under New York Labor Law § 198. CISC moves for summary judgment with regard to all claims. For the reasons that follow, the motion is granted as to all of Lu's federal and state discrimination claims, and the Court declines to exercise supplemental jurisdiciton over Lu's claim for back pay.

**FACTUAL OVERVIEW**

        Lu is a Chinese-American woman, born in Beijing, China, who worked as a financial

1

advisor ("FA") for CISC at 39-01 Main Street, Flushing, New York (the "Branch") from 1994 to 2006, when she was terminated.[1] Lu's qualifications are not in dispute.

In 2002, Lu was informed that CISC would be adding a Korean-speaking FA to the Branch to service its Korean-speaking clientele. CISC hired Daniel Kim ("Kim"), an Asian-American man of Korean descent. Kim was assigned to a different CISC branch, but worked two days per week in the Branch. Lu complained about the addition of Kim to the Branch to her supervisor, Dustin Chase, by email on April 5, 2002. CISC and Lu's Branch Manager agreed that Lu would continue to serve all of her existing clients, and that Kim would split new business at the Branch with Lu. It is in dispute whether any of Lu's existing clients or accounts were reassigned to Kim.

In 2005, routine FA surveillance by CISC's Compliance Department detected possible compliance issues with Lu's trades and sales of the Oppenheimer Senior Floating Rate Fund (the "Fund") for the period January 1, 2005, through August 30, 2005. The surveillance team concluded that Lu was selling the Fund to customers in violation of the suitability and risk tolerance guidelines from CISC's Registered Representative Manual (the "RR Manual"). While Lu does not contest the surveillance team's numerical findings regarding her sales of the Fund, she challenges its conclusion that she was not in compliance because, she contends, each customer who was "over-concentrated" in the Fund signed a waiver form. The surveillance team also found that Lu was modifying customer information so that the customers would appear to comply with the solicitation requirements in the RR Manual; Lu disputes this and contends that these requirements were unclear.

Because of these possible compliance issues, Lu was referred to CISC's Disciplinary

---

[1]The following facts are taken from CISC's and Lu's 56.1 statements, and are not in dispute unless otherwise noted.

2

Action Committee ("DAC"). The DAC determined that Lu should be placed on CISC's Heightened Supervision Program ("Heightened Supervision") for three months. Lu was notified of the DAC's determination and signed an acceptance letter acknowledging the terms of her Heightened Supervision, which required additional oversight of her trades and sales but did not prohibit her from working or affect her compensation. On March 27, 2006, Lu was notified that she had been removed from Heightened Supervision; on March 30 she signed a letter acknowledging that "any future compliance deficiencies or violations of policy could result in the re-imposition of heightened supervision, fines, and/or additional sanctions up to or including termination." Def.'s 56.1 Stmt. ¶ 90; Def.'s 56.1 Stmt. Ex 27.[2]

On February 9, 2006, CISC hired Chuanlu "Charles" Qiu ("Qiu"), an Asian-American male of Chinese descent, as an FA in the Branch. Lu's supervisor at the time, Jerry Wiffler, and CISC's Regional Investment Manager, Richard Eisman ("Eisman"), met with Lu to inform her that they would be reassigning some of her accounts in order to seed Qiu's book of business and to attempt to increase production in the Branch.[3] Qiu was ultimately assigned approximately 600 of Lu's 2000 brokerage accounts, over Lu's protests.

In September 2006, the CISC Compliance Department again detected possible compliance issues with Lu's sales of the Fund during its routine surveillance. Mimi Koo ("Koo"), a CISC Compliance officer, and Eisman met with Lu; Koo subsequently submitted to CISC's general counsel a memoranda entitled "Supervisor Visit to Valerie Lu," which asserted that Lu had returned to the same sales practices which had warranted her placement on Heightened Supervision; Lu disputes this.

---

[2]CISC has supplemented its 56.1 statement by attaching the exhibits to which it cites.

[3]Lu's direct supervisor was the Investment Manager for the CISC district in which the Branch was located. Wiffler held this position from June 2002 to August 2006, and Eisman then held it from August to November of 2006.

As a result of Koo's memorandum, Lu was audited, and CISC Senior Compliance Examiner Lee Weiss prepared a memorandum outlining numerous problems with Lu's files. On November 7, 2006, Eisman and another CISC manager met with Lu and informed her that she was terminated because of her sales practices; Eisman subsequently memorialized this determination and submitted a "Recommendation for Termination" to his superior and CISC human resources. On November 29, 2006, CISC filed a Form U-5,[4] stating the reason for Lu's termination as: "Following conclusion of period of heightened supervision, firm lost confidence in rep's sales practices." Defendant's 56.1 Stmt. ¶ 114.

## SUMMARY JUDGMENT UNDER TITLE VII

"Summary judgment should be granted if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Blanch v. Koons*, 467 F.3d 244, 250 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). There is a genuine dispute as to a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); the "facts must be viewed in the light most favorable to the nonmoving party." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2676 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

In federal discrimination cases under Title VII, where, as here, no direct evidence of employment discrimination is presented, the Court applies the well-established three-part *McDonnell Douglas* burden-shifting test. *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

> Ordinarily, a plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision

---

[4]"Form U-5" is the Uniform Termination Notice for Security Industry Registration.

or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class. If the plaintiff succeeds, a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action. If the defendant proffers such a reason, the presumption of discrimination created by the prima facie case drops out of the analysis, and the defendant will be entitled to summary judgment unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination. The plaintiff must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination.

*Dawson*, 398 F.3d at 216 (internal cites and quotations omitted). Lu's membership in the protected classes and qualification to work as an FA -- *McDonnell* factors one and two -- are not in dispute.

The Court notes that CISC's non-discriminatory reason "cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (internal quotations omitted; emphasis in original). Nevertheless, "[p]roof that the defendant's explanation is unworthy of credence is . . . one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000). "Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated," *id.* at 148 (emphasis added); on the other hand, "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id*. In such circumstances, the Court "may ... grant a defendant's motion for summary judgment." *Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000). The Second Circuit has held that "the Supreme Court's decision in *Reeves* clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his 'ultimate

burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Id.* (quoting *Reeves*, 530 U.S. at 143).

## TITLE VII GENDER DISCRIMINATION CLAIMS

Lu's claims of gender discrimination are based upon the following actions by CISC: (1) the hiring of Kim and the alleged transfer of Lu's accounts to him; (2) Lu's placement on Heightened Supervision; (3) the hiring of Qiu and the transfer of Lu's accounts to him; and (4) Lu's termination. The court addresses each in turn.

**1. Lu's Claims Regarding Kim**

Lu admits that she did not file a claim with regard to CISC's assignment of Kim to the Branch within Title VII's 300-day notice requirement. *See* Pl.'s 56.1 Stmt. ¶ 143. Thus, she is barred from asserting her claims regarding Kim unless the Court applies the "continuing violation" doctrine and finds that Lu "experienced a continuous practice and policy of discrimination;" if so, "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992). However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

The hiring of Kim and any transfer of Lu's account that occurred at that time were discrete discriminatory acts, and therefore the continuing violation doctrine does not apply. *See Flaherty v. Metromail Corp.*, 293 F. Supp. 2d 355, 358 (S.D.N.Y. 2003) (holding that the assignment of lucrative accounts to a co-worker is a discrete act which does not constitute a "systematic policy or practice" that extends the statute of limitations on discrimination claims). That Lu continued to split new business with Kim after he was assigned to the Branch does not change the nature of CISC's acts. *See Wisneski v. Nassau Health Care Corp.*, 296 F. Supp. 2d 367, 375

(E.D.N.Y. 2003) ("A 'continuing violation' cannot be established merely because the claimant continues to feel the effects of the time-barred discriminatory act.").

**2. Lu's Placement on Heightened Supervision**

In order to have suffered an adverse employment action sufficient to establish a prima facie case, Lu must have "endure[d] a materially adverse change in [her] terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). To be "materially adverse," a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* Lu's placement on Heightened Supervision did not involve any material alterations of her employment conditions, such as a diminution of salary or commissions. *See Figueroa v. City of New York*, 198 F. Supp. 2d 555, 568 (S.D.N.Y. 2002) ("Although reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions.").

**3. Hiring and Transfer of Accounts to Qiu**

Lu claims that the transfer of her accounts to Qiu constituted gender discrimination because CISC treats men disparately well.

Preliminarily, the Court notes that the transfer of Lu's accounts constitutes a "materially adverse" employment action. *See Patrolmen's Benevolent Ass'n. of City of New York v. City of New York,* 310 F.3d 43, 51 (2d Cir. 2002) ("[A] demotion evidenced by a decrease in wage or salary" constitutes a "materially adverse change."); *Steele-Hegg v. Computer Associates Intern., Inc.*, 2007 WL 1989434, *10 (E.D.N.Y. July 9, 2007) (holding that the loss of commissions from the reassignment of plaintiff's accounts constitutes an adverse employment action).

Lu meets her *de minimus* burden of establishing that these events give rise to an inference of discrimination simply by showing that her accounts were transferred to a similarly-

7

situated man. *See Reeves*, 530 U.S. at 142 (prima facie case established by showing that a person not in the plaintiff's protected group was hired to fill plaintiff's position). Lu additionally offers the affidavit of Alaina Spilkevitz ("Spilkevitz"), a female FA who also worked under Eisman's supervision and claims that Eisman transferred several of her accounts to male FAs.

CISC proffers a non-discriminatory reason for taking these actions: that they hired Qiu and transferred Lu's accounts to him in order to "seed his book" and increase overall production because the Branch was not performing up to expectations.

In retort, Lu asserts that "[u]pon information and belief, no other [FA] had their accounts reassigned," Lu Aff. at 55, and that "[c]learly, the reason given for reassignment of annuity accounts due to inactivity was pretextual," *id.* at 58. These are simply unsupported, conclusory statements; nothing in the record suggests that Lu's accounts were reassigned because of her gender. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) ("[E]ven in the discrimination context, a plaintiff must prove more than conclusory allegations of discrimination to defeat a motion for summary judgment."); *see also Goenaga v. March of Dimes Birth Found.*, 51 F.3d 14, 18 (2d Cir.1995) (In a motion for summary judgment, the non-moving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible.").

At oral argument, Lu's counsel argued that the asserted falsity of CISC's proffered reason requires the Court to deny summary judgment. This is not so; even if the Court assumes that CISC's non-discriminatory reason for transferring her accounts was false, on the record before the Court "no rational factfinder could conclude that [CISC's actions were] discriminatory*." Reeves*, 530 U.S. at 148*; see also Schnabel*, 232 F.3d at 88 (Even where plaintiff established a prima facie case of discrimination and where "a jury could indeed credit plaintiff's account and conclude that the stated reasons for discharging plaintiff were a pretext," summary judgment was still warranted where plaintiff "offered no evidence that he was discriminated against because of his [protected

8

characteristic].""); *Monte v. Ernst & Young LLP*, 330 F. Supp. 2d 350, 363 (S.D.N.Y. 2004) (Where plaintiff established prima facie case and where the court assumed that defendant's proffered reason was false, summary judgment was warranted under *Reeves* since plaintiff only presented "his own opinion," "a few vague and isolated remarks made by [plaintiff's superiors] over the course of several years," and "evidence suggesting that [plaintiff's manager] favored employees who were [similarly situated and not in the protected classes.]"), *aff'd*, 148 Fed.Appx. 43 (2d Cir. 2005).[5]

**4. Lu's Termination**

Lu pegs her wrongful termination claim on her contention that Kim, Qiu, Frank Magri ("Magri"), *see* Spilkevitz Aff. ¶ 5, and an additional, unnamed FA, *see id.* ¶ 24, were all similarly situated to her and were not terminated. To make such a showing, Lu must establish that they were "similarly situated in all material respects." *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) ("To demonstrate that similarly situated males were treated differently, [plaintiff] has to show that these males ... engaged in the same misconduct as she.").

Regarding Kim, Qiu, and the unnamed FA, Lu simply claims that they sold "a substantial amount" of the Fund and were not disciplined, citing to a memorandum from CISC which states that Kim and Qui "were showing an increased trend in Oppenheimer Senior Floating Rate Fund Sales." Gabor Decl. Ex. M; *see also* Spilkevitz Aff. ¶ 24 (Spilkevitz was "aware of a male Financial Advisor ... who sold a substantial amount of the Oppenheimer Senior Floating Rate [and] was not disciplined...."). Lu does not assert that other FAs sold the Fund in the same amount that she did, nor does she reference any other FA who was placed on Heightened Scrutiny and was not subsequently terminated when they returned to the same practices that warranted the scrutiny in the first instance. As such, Lu has failed to meet her prima facie burden, even when the record is

---

[5]The same conclusion would apply to Lu's claims regarding Kim if the Court were to reach the merits of that claim.

viewed in the light most favorable to her. *See Davis v. Bowes*, 1997 WL 655935, *19 (S.D.N.Y. 1997) (To meet the "similarly situated" standard, plaintiff must compare the alleged adverse employment actions to others who "have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.").

Regarding Magri, Lu claims only that he was allowed to mislead customers and that no adverse entry was made on his license when he left CISC.[6] *See* Spilkevitz Aff. ¶ 5. Even assuming the truth of these statements, Lu has failed to assert that Magri engaged in any of the conduct for which she was terminated.

## ADDITIONAL FEDERAL CLAIMS

### 1. Ethnicity Discrimination under Title VII

Although Lu's allegations primarily involve gender discrimination, she also claims that she was discriminated against because she is Chinese. These claims are based upon the same events as Lu's gender claims.

Nothing in the record supports a finding of discrimination based on Lu's ethnicity. *See Martin v. MTA Bridges & Tunnels*, 610 F. Supp. 2d 238, 250 (S.D.N.Y. 2009) ("Although courts in this Circuit have recognized that there is no rigid rule about what circumstances allow an inference of discrimination, a plaintiff must do more than state that she is a member of a protected class who suffered an adverse employment action.") (internal citation omitted). Tellingly, Lu admits that Qiu, to whom her accounts were reassigned and who Lu claims ultimately replaced her, is also Chinese. *See Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) (The fact that plaintiff admits that defendant took actions which benefitted members of the protected class protected class in question "strongly suggest that invidious discrimination was unlikely.").

---

[6]The circumstances of Magri's departure are not clear from the record.

**2. Lu's § 1981 Claim**

Claims of employment discrimination under Section 1981 are analyzed under the same standard as Title VII claims. *See Pacheco v. New York Presbyterian Hosp.*, 593 F. Supp. 2d 599, 629 (S.D.N.Y. 2009) (applying *McDonnell* burden-shifting framework to § 1981 claims). As such, this claim also must fail.

**3. Lu's Hostile Work Environment Claim**

To the extent that Lu has alleged that she was subject to a hostile work environment based on any form of discrimination, she must establish a prima facie claim by establishing: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003) (internal citations omitted). The discrete and isolated nature of the actions alleged in this case cannot support a hostile work environment claim. *See Morgan*, 536 U.S. at 115 (2002) ("Hostile environment claims are different in kind from discrete acts[; t]heir very nature involves repeated conduct [and] cannot be said to occur on any particular day.").

**STATE CLAIMS**

Lu's state law claims remain, and the Court must determine whether to exercise supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c) (a district court "may decline to exercise supplemental jurisdiction" if, among other circumstances, "the district court has dismissed all claims over which it has original jurisdiction."). As the Court noted in *Drake v. Laboratory Corporation of America Holdings*, 323 F. Supp. 2d 449 (E.D.N.Y. 2004), the Second Circuit has set forth several factors to be considered when deciding whether to exercise supplemental jurisdiction: "(1) whether state law claims 'implicate[] the doctrine of preemption,' . . . (2) 'judicial economy,

convenience, fairness, and comity,' . . . (3) the existence of 'novel or unresolved questions of state law,' . . . (4) whether state law claims 'concern the state's interest in the administration of its government.'" *Id.* at 452 (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003)).

Lu's claims brought under the NYSHRL and the NYCHRL are analytically identical to her claims under Title VII. *See Leibowitz v. Cornell University*, 584 F.3d 487, 498 n.1 (2d Cir. 2009) ("[G]ender discrimination claims brought pursuant to the NYSHRL, and the NYCHRL are analyzed under the Title VII framework."); *see also Norville v. Staten Island University Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) (appling *McDonnell Douglas* burden-shifting scheme to race discrimination claims brought under the NYSHRL and the NYCHRL). Because "[d]uplicative litigation at multiple levels of government involving the same facts are contrary to the objectives of the Supplemental Jurisdiction Act and the public interest," *Chambers v. Capital Cities/ABC*, 851 F. Supp. 543, 545 (S.D.N.Y. 1994), the Court will exercise supplemental jurisdiction over Lu's state law claims of discrimination.

Lu's state claims regarding Kim are time barred; Lu admits that she did not bring suit within the NYSHRL's and the NYCHRL's three-year statute of limitations, and the Court's analysis regarding her failure to establish a continuing violation applies equally to these claims. *See Milani v. International Business Machines Corp., Inc.*, 322 F.Supp.2d 434, 452 n.32 (S.D.N.Y. 2004) (holding that *Morgan* applies to NYSHRL and NYCHRL claims). Lu's remaining discrimination claims under the NYSHRL and NYCHRL must fail in accordance with the Court's analysis of her Title VII claims.

The Court will not exercise supplemental jurisdiction over Lu's claim for back pay under New York Labor Law § 198. The Court's determination of this issue would not promote judicial economy as this claim is not governed by a standard identical to a federal claim already analyzed in this decision; none of the factors that the Court identified in *Drake* support exercising

supplemental jurisdiction.

## CONCLUSION

CISC's motion for summary judgment is granted as to Lu's claims under Title VII, § 1981, NYSHRL, and NYCHRL. Lu's claim for back wages is dismissed without prejudice. Accordingly, the Complaint is dismissed.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, NY
December 9, 2009